UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LATASHA RENEE MIMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:26-cv-02113-JRO-MG |
| | ) | |
| CIRCLE K STORES INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING MOTION TO PROCEED *IN FORMA PAUPERIS*, SCREENING COMLAINT, AND DIRECTING FURTHER PROCEEDINGS**

This matter is before the Court on *pro se* Plaintiff Latasha Renee Mims's Motion for Leave to Proceed *In Forma Pauperis*. Dkt. [2]. Plaintiff filed a Complaint alleging various civil rights violations under federal law against Defendant Circle K Stores, Inc. Dkt. 1. For the reasons below, the Plaintiff's Motion to Proceed *in Forma Pauperis*, dkt. [2], is **GRANTED.** Because the Court grants that Motion, this action is also subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B). For the reasons stated below, Plaintiff's claims shall proceed.

**I. *IN FORMA PAUPERIS* STATUS**

The Court may authorize a plaintiff to file a lawsuit "without prepayment of fees" if the plaintiff "submits an affidavit" demonstrating that she lacks the assets to pay the filing fee at this time. 28 U.S.C. § 1915(a)(1). Here, Plaintiff's motion, dkt. [2], meets this standard and is **GRANTED**.

While *in forma pauperis* status allows a plaintiff to proceed without pre-paying the filing fee, the plaintiff remains liable for the full fees. "[A]ll § 1915(a)

does for any litigant is excuse the *pre*-payment of fees. Unsuccessful litigants are liable for fees and costs and must pay when they are able." *Robbins v. Switzer*, 104 F.3d 895, 898 (7th Cir. 1997). The filing fee for *in forma pauperis* litigants is $350.00. No payment is due at this time, but the $350.00 balance remains due and owing.

## II. SCREENING STANDARD

When a plaintiff is granted *in forma pauperis* status, the Court has an obligation to ensure the complaint is legally sufficient. 28 U.S.C. § 1915(e)(2)(B). The Court must dismiss the complaint if it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary damages against a defendant who is immune from such relief. *Id.* Dismissal under § 1915 is an exercise of this Court's discretion. *Denton v. Hernandez*, 504 U.S. 25, 34 (1992). In determining whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "taking all well-pleaded allegations of the complaint as true and viewing them in the light most favorable to the plaintiff." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (quoting *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). To survive dismissal, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Because a defendant must have "fair notice of what . . . the claim is and the grounds upon which it rests," it is not enough for a plaintiff to say that she has been illegally harmed. *Twombly*, 550 U.S. at

555. Rather, she must set forth a "short and plain statement" of facts in her complaint such that the Court can infer the ways in which the named defendant could be held liable for the harm alleged. Fed. R. Civ. P. 8(a)(2).

**III. THE COMPLAINT**

The Court accepts Plaintiff's factual allegations as true at the pleading stage but not his legal conclusions. *See Iqbal*, 556 U.S. at 678 ("we must take all of the factual allegations in the complaint as true," but "we 'are not bound to accept as true a legal conclusion couched as a factual allegation'") (quoting *Twombly*, 550 U.S. at 555)).

On April 29, 2026, Plaintiff alleges that she was subject to unwanted attention from a co-worker named Larry. Per the complaint, Larry came up and "forcibly hugged" Plaintiff without her consent because he was "just getting [his] morning hug." Dkt. 1 ¶ 13. Plaintiff did not return the hug, as it made her highly uncomfortable. That event was witnessed by an assistant manager, who did not intervene or address Larry's conduct. *Id.* ¶ 15.

One week later, Plaintiff received a Green Card through Indiana's BARS program in recognition of her work performance and performance of her job duties. *Id.* ¶ 19.

On May 6, 2026, another incident with Larry occurred. He plugged in his phone to charge and then took out his pocketknife, waved it in front of Plaintiff's face, and warned her not to touch the phone. *Id.* ¶¶ 23–25. Plaintiff understood this act to be a threat and an act of intimidation. Plaintiff then reported this

incident and the hugging incident to her team leader and the assistant manager. Nothing was done about either incident.

Plaintiff informed management on May 7, 2026, that she was concerned for her safety and was not comfortable with returning to work until she spoke with the store manager, who was on vacation until May 13. Plaintiff wrote a report to her assistant manager. *Id.* ¶ 51. Plaintiff was informed that Larry would not be scheduled to work until May 13, which she took as a representation that it was safe for her to return to work. When the store manager returned to work on May 13, she contacted Plaintiff by phone, said "she did not support bad behavior" and asked whether Plaintiff wanted to work the next day. *Id.* ¶ 54. Plaintiff was informed that she and Larry would not be scheduled to work together and was asked to send a report to the store manager regarding the incidents with Larry. Plaintiff sent the report but did not receive any substantive response.

On May 14, Plaintiff returned to work and asked the store manager about the report and any follow-up actions. Plaintiff was told Larry would not be fired. Plaintiff was also told she would not be scheduled with Larry. Plaintiff then asked about being transferred to another store because of her concerns regarding the pocketknife incident and the hug. Plaintiff was then told to go home and informed that someone would reach out to her as to her transfer request. *Id.* ¶ 91. Plaintiff left and then filed a police report and called the Circle K Ethics hotline report number. Plaintiff "located another Defendant store where she could potentially transfer and had completed an interview for the transfer." *Id.* ¶

102. On May 22, 2026, while waiting to be contacted about the potential transfer, Plaintiff was terminated because "Defendant alleged that Plaintiff had been a no-call/no-show for five days, including weekend days." *Id.* ¶ 98. Plaintiff believes that Larry received preferential treatment because he is friends with the store manager's husband. Plaintiff filed a complaint with the Equal Employment Opportunity Commission, which issued her a Right to Sue letter on September 14, 2026. Dkt. 1-1 at 11–12.

## IV. DISCUSSION

Plaintiff's lawsuit alleges a claim for sex discrimination under Title VII and a claim for retaliation under Title VII. Dkt. 1 at 7–8. Both claims **shall proceed**.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* is **GRANTED.** Dkt. [2]. Both claims shall proceed.

The **clerk is directed,** pursuant to Federal Rule of Civil Procedure 4(c)(2), to issue process to Circle K Stores, Inc. Process shall consist of a summons, a copy of the complaint, dkt. 1, applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

Nothing in this Order prohibits the filing of a proper motion pursuant to Rule 12 of the Federal Rules of Civil Procedure.

**SO ORDERED.**

Date: 10/8/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

Circle K Stores, Inc.
1130 West Warner Road
Tempe, AZ 85284

LATASHA RENEE MIMS
7537 E. Rimwood Lane
Apt B
Indianapolis, IN 46256